**Marilyn T. LALLIER**

v.

**Raymond G. LALLIER.**

**No. 89–574–Appeal.**

Supreme Court of Rhode Island.

May 8, 1991.

Deborah Buffi, Dept. of Human Services, Terence J. Tierney, Dept. of Atty. Gen., for plaintiff.

John E. McCann, Brian Goldstein, Kirshenbaum & Kirshenbaum, Inc., Cranston, for defendant.

OPINION

MURRAY, Justice.

This case comes before us on appeal by the defendant, Raymond G. Lallier, from an order of the Providence County Family Court. In that order the Family Court ruled that the state was entitled to seek reimbursement for the full amount of public-assistance benefits from one parent alone. We affirm.

The defendant and plaintiff, Marilyn T. Lallier, were divorced on June 27, 1978. The Family Court awarded custody of the two minor children to plaintiff and ordered defendant to pay $40 per week in child support. On April 6, 1979, plaintiff began receiving public-assistance benefits under the Aid to Families with Dependent Children (AFDC) program, and pursuant to G.L.1956 (1977 Reenactment) § 40–6–9, plaintiff assigned her child-support rights to the state. Thereafter, the Family Court ordered defendant to pay the $40–per–week child support directly to the state. In 1983 a Family Court master modified the support order to $20 per week because of defendant's unemployed status and his personal problems.

By October of 1986 defendant had fallen behind in his payment obligation, and the state filed a motion to adjudge defendant in contempt. Following a hearing, the master found defendant in willful contempt and ordered him to pay the $3,042.88 arrearage, which he did. The master also placed a lien on defendant's real estate in order to secure reimbursement for the remaining AFDC benefits that the state had paid to plaintiff. When defendant sold the property on February 29, 1988, he paid $22,707.80 to the state in discharge of the lien. The figure $22,707.80 was arrived at by subtracting the amount defendant had already paid the state ($11,179.20) from the total amount of AFDC payments plaintiff had received ($33,887).

In May of 1988 defendant filed a motion in Family Court seeking repayment from the state of $11,353.90, one-half of the amount defendant had paid to discharge the lien. As grounds therefor defendant alleged that he and plaintiff shared a co-equal obligation to pay child support once the children attained school age and that, therefore, plaintiff was liable to the state for one-half of the reimbursement. The master agreed and further held that defendant was entitled to be repaid $15,387.90, half of all sums defendant had paid in excess of his child-support obligation. The state appealed. Following a hearing on January 11, 1989, the Family Court reversed the master's decision. In his order, the trial justice found that because the state was permitted to sue one parent alone for reimbursement of the total amount of AFDC benefits, the state owed nothing to defendant. The defendant filed an appeal to this court on May 31, 1989.

At the outset we note plaintiff's contention that this appeal is barred by the doctrine of res judicata. The plaintiff argues that defendant should have presented these arguments in an appeal of either the 1986 order imposing the lien or the 1988 order releasing the lien. As defendant correctly points out, however, plaintiff failed to raise the issue of res judicata in the Family Court below. Therefore, the issue is not properly before us now. We proceed to the merits of the case.

■ It is well settled that the Family Court may order a noncustodial parent to reimburse the state for AFDC benefits paid to the custodial parent, even in the absence of a prior support order. *See State v. Erben*, 463 A.2d 194 (R.I.1983); *Santiago v. Santiago*, 122 R.I. 740, 412 A.2d 222 (1980). The two issues before us now are how much money the state is entitled to recover and from whom the state may recover it.

■ The defendant contends that when a prior order of support exists, the state may recover reimbursement only up to the amount of support that plaintiff could have received under the court order, regardless of the total amount of public assistance provided. The defendant challenges the state's right to the $22,707.80 acquired by way of the lien because defendant was not in arrears at that time and he had paid the state no less than he had been ordered to pay plaintiff. The state argues that it was entitled to recover reimbursement of all support furnished, even if this amount exceeded the amount specified in the prior order of support.

The defendant cites 42 U.S.C. § 656 (1988) in support of his argument. This section states:

"(a)(1) The support rights assigned to the State under section 602(a)(26) of this title * * * shall constitute an obligation owed to such State by the individual responsible for providing such support. Such obligation shall be deemed for collection purposes to be collectible under all applicable State and local processes.

(2) The amount of such obligation shall be—

(A) the amount specified in a court order which covers the assigned support rights, or

(B) if there is no court order, an amount determined by the State in accordance with a formula approved by the Secretary."

Although this statute provides that the amount of reimbursement is limited to "the amount specified in a court order," we are not compelled to follow this rule. Rhode Island enacted its Uniform Reciprocal Enforcement of Support Act (URESA) in 1951 whereas the federal statute was not enacted until 1975. Social Services Amendments of 1974, Pub.L. 93–647, § 101(a), 88 Stat. 2356 (1975). We are of the opinion that the federal statute does not purport to preempt the state statute in this instance, particularly in light of the change in circumstances discussed below.

General Laws 1956 (1969 Reenactment) § 15–11–14, originally enacted in 1951 as part of the Rhode Island URESA, authorized the state to "secur[e] reimbursement of expenditures so made." That statute was later replaced by G.L.1956 (1988 Reenactment) § 15–11–8, which speaks in terms

of "securing reimbursement for support furnished." Neither of these statutes purports to limit the amount of reimbursement to the amount of support ordered by the court. It is our considered opinion, therefore, that the Legislature intended to allow the state to recover the full amount of AFDC benefits provided and not to be limited by the court order.

We note that *Erben* and *Santiago,* both *supra,* are the only Rhode Island cases that have dealt with the issue of reimbursement to the state for public assistance provided to a divorced or separated parent. In *Santiago* we stated that the relevant statute, § 15–11–14, "recognizes the state's right to be reimbursed by a father for 'expenditures' made by the state to support an individual who should have been receiving paternal support." *Santiago,* 122 R.I. at 745, 412 A.2d at 225. In neither *Erben* nor *Santiago* were the parties operating under a prior order of support. The holdings of these cases, however, suggest that the amount of reimbursement should equal the amount of public assistance furnished.

In this particular case there was a change of circumstances that occurred after the court reduced defendant's payment obligation to $20 per week. By selling his real estate, defendant came into possession of a substantial amount of money not previously available to him. Consistent with our interpretation of the Rhode Island statutes, we believe that this change of circumstances gave the state the right to reach whatever moneys became subsequently available and apply them to collect its reimbursement. We therefore hold that the state was entitled to recover the $22,707.80 in reimbursement for the full amount of AFDC benefits provided. Furthermore, we find it unreasonable to allow parents to impose their obligations of support on the public when they have the means to reimburse the state.

Having decided that the state was entitled to the full reimbursement, we come to the issue of whether one parent alone may be sued for the entire amount. The defendant contends that he and plaintiff shared a co-equal obligation of child support and therefore each of them must reimburse the state for one-half of the amount due. Although we agree with the theory of co-equality, we do not agree that defendant is liable only for his half and the state must recover the other half from plaintiff. Our reading of the relevant statutes indicates that the state is authorized to pursue reimbursement from either one or both parents. *See* G.L.1956 (1988 Reenactment) § 15–9–1(1), as amended by P.L.1990, ch. 65, art. 38, § 1 (parents are *severally liable* for child support and for reimbursement when state agency pays support); *see also* G.L.1956 (1988 Reenactment) § 15–5–16.2(a) (court may order *either or both* parents to pay child support in divorce proceeding); G.L.1956 (1984 Reenactment) § 33–15–1(a), as amended by P.L.1987, ch. 83, § 1 (parents are joint natural guardians of minor children, shall be equally charged for their care, and may be sued *jointly or separately* for their support).

The state has chosen to pursue reimbursement only from the defendant. This is clearly allowed by the statutes cited above. We therefore hold that the state was authorized to seek reimbursement solely from the defendant for the full amount of benefits paid. Furthermore, we endorse the trial justice's suggestion that in the future the state should bring actions for reimbursement against both parents jointly and allow the court to determine the amount of payment owed by each in accordance with established child-support guidelines.

For the reasons stated, the defendant's appeal is denied and dismissed, the decision of the Family Court is affirmed, and the papers of the case are remanded to the Family Court.